**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TODD O. COPELAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08-CV-270-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER AND OPINION**

Plaintiff Todd Copeland seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance and supplemental security income benefits under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1]  [Dkt. # 11].

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence

---

[1] Plaintiff's application for disability insurance benefits and supplemental security income was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Lantz McClain was held on June 1, 2007. By decision dated December 19, 2007, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied plaintiff's request for review on March 14, 2008. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991). Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was born on August 26, 1968, and was 38 years old on the date of the hearing before the ALJ. [R. 29]. Plaintiff provided conflicting information as to the highest grade of school he completed. At the hearing plaintiff testified he completed the ninth grade [R. 30]; however, in his application documents he stated he had an eleventh grade education. [R. 139]. Plaintiff is married to Jessica Jones Copeland. [R. 117]. He and his wife live with his two children and her child from prior marriages. [R. 112]. From 2003 until 2005, plaintiff was employed as a forklift driver in a warehouse, quitting that job on November 17, 2005, because he refused to work on Thanksgiving Day believing he had more seniority than others. [R.135]. Since that date, plaintiff's means of income has been child support from his former wife. He lives with his family in a trailer located on property owned by his brother. [R. 30-1]. Prior to 2003, plaintiff held other unskilled jobs as a framer, feed mill worker, mold grinder and production worker. [R. 44, 152].

In his application, plaintiff claimed to be unable to work because of back pain he has experienced since quitting his job on November 17, 2005. [R. 30, 135]. At the hearing, in addition to claiming disability based on back pain, he also claimed disability due to problems with his left

hand and chronic obstructive pulmonary disease ("COPD"). [R. 31, 36, and 39].  Plaintiff claimed his back problems resulted from an automobile accident in 1986, purportedly breaking his upper back; and from falling 30 feet off a ladder in 1991, purportedly rupturing three discs in his lower back. [R.57].  Plaintiff claimed breathing problems from smoking cigarettes for over 20 years and from a collapsed lung when he was physically assaulted in 1991. [R. 56, 173].

In assessing plaintiff's qualification for disability benefits and supplemental income, the ALJ found at step one that plaintiff has not engaged in any substantial gainful activity since November 17, 2005, the alleged disability onset date, and that plaintiff met the insured status requirements through December 31, 2009. [R. 18].  At step two, the ALJ determined plaintiff's severe impairments as lumbar facet arthropathy and chronic obstructive pulmonary disease ("COPD"). The ALJ denied plaintiff's claim for an impaired left hand, finding that claim to be medically non-determinable. [R. 18].  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  [R. 18].  The ALJ found that plaintiff has the residual functional capacity ("RFC") to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 6 hours in an 8 hour workday, sit at least 6 hours in an 8 hour workday, and occasionally stoop; and that plaintiff should avoid concentrated exposure to dust and fumes. [R. 19]. At step four, the ALJ found that plaintiff was unable to perform his past relevant work as a warehouse worker, but that he could perform medium level work with the limitations specified above. [R. 22]. The ALJ found transferability of job skills was not material to the determination of disability.  [R. 22]. At step five, the ALJ considered plaintiff's age, education, work experience – as well as plaintiff's RFC, the Medical-Vocational Guidelines ("Grid") and the testimony of the

vocational expert-- and found that plaintiff was capable of performing light exertion work and that such jobs exist in substantial numbers in the national economy. The ALJ concluded that plaintiff was not disabled within the meaning of the Act . [R. 23]. This finding was the fifth in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[2]  To determine the types of available work plaintiff could perform in the national economy, the ALJ relied on the Grid and the testimony of a vocational expert. [R. 23]   The ALJ concluded that plaintiff could perform such light exertion occupations as bench assembler, poultry processor, semi-conductor assembler, and clerical mailer. [R. 23].

The only claim plaintiff presents in the instant appeal is that the ALJ's analysis of plaintiff's credibility was not supported by substantial evidence.  [Dkt. # 15 at 2].

## Discussion

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C.§ 423 (d)(5); 20 C.F.R. § 404.1512(a).  "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To meet this burden plaintiff must provide medical evidence of an impairment and the severity of his impairment during the time of his alleged disability.  20 C.F.R. § 404.1512(b).  Disability is a physical or mental

---

[2] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

4

impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.§ 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 404.1508. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 404.1513(a).

At the hearing, plaintiff testified that his back causes him constant pain. The pain shoots down his left leg to his toes. His leg gets numb and unsteady which sometimes causes him to fall down. [R.32]. The pain shoots to the back of his neck, causing headaches and restricting his ability to turn his head from side to side and look up. [R. 35]. The pain from his back shoots down in his left arm. His left thumb and little finger become numb, causing him to drop things that he pick ups. [R. 32]. In order to lift anything he must extend his leg out straight and squat down. [R.39]. He can drive, but he must stop every 30 to 40 minutes, pull off the road, get out, and walk around. [R. 40]. He has problems changing lanes when he drives because he can not turn his head more than 25 percent and he has limited use of his left hand and arm. [R. 41]. He can only sit for 15 minutes, and stand for 20 minutes before the pain starts to hurt him. He also testified that he has a difficult time getting out of bed. [R. 33].

In assessing plaintiff's credibility, the ALJ found that the plaintiff's medically determinable impairments could reasonable be expected to produce the alleged symptoms, but that the plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. [R. 20]. In making this finding, the ALJ considered all of plaintiff's symptoms and the extent these symptoms could reasonably be accepted to be consistent with the objective

medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The ALJ also considered opinion evidence. [R. 19].

Plaintiff contends that the ALJ erred in discrediting his testimony about his limitations in daily activities. Plaintiff claims the fact that he can drive, fish, and contribute to housework, personal hygiene, care of pets, and shop for food and clothing, does not mean that he can engage in substantial gainful employment. Plaintiff contends that one can care for personal needs and still be impaired. The ALJ identified discrepancies in statements made by plaintiff regarding his daily activities in his function report [R. 124-130], compared to his testimony at the hearing. [R. 33–42]. The ALJ also found that plainitff's statements at the hearing were inconsistent with the medical evidence. [R. 21]. The ALJ cited the July 24, 2006, RFC assessment by Dr. Luther Woodcock, M.D. who formulated a greater RFC assessment than the assessment found by the ALJ.[3] Dr. Woodcock noted that plaintiff's gait was normal with no risk of falling and that he was able to heel to toe walk without difficulty. [R. 21,198]. Dr. Woodcock observed that plaintiff exhibited no manipulative, visual, communicative or environmental limitations. [R. 21, 201]. On October 10, 2006, Dr. Woodcock's assessment of plaintiff's RFC was affirmed by Dr. David Bissell, M.D. [R. 21, 205]. The ALJ also relied on x-rays of plaintiff's lumbar spine taken on July 31, 2006, which showed only minimal retrolisthesis present at L4-L5, and only minimal degenerative changes of the toe joints in his right foot. [R. 21, 213].

Based on the foregoing, the Court finds that the ALJ's assessment of plaintiff's testimony

---

[3] Dr. Woodcock opined that plaintiff had the functional capacity to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull unlimited other than as shown for lift and/or carry. [R. 198].

regarding his daily activities was supported by substantial evidence. Plaintiff's testimony as to the severity of his pain was inconsistent with the objective medical evidence cited by the ALJ. Further, in assessing the credibility of plaintiff's testimony, the ALJ properly identified inconsistencies in plaintiff's testimony at the hearing and his prior statements. The ALJ linked his findings to the evidence of record to support his determination that plaintiff exaggerated the impact of his impairments. Because plaintiff fails to show that the ALJ misread the objective medical evidence as a whole, deference must be given to the ALJ's determination of plaintiff's credibility. See e.g Wyatt v. Barnhart, 190 Fed. Appx. 730, 734 (10th Cir. 2006).

In evaluating the credibility of plaintiff's testimony as to his breathing problems, the ALJ cited a September 12, 2005 medical report showing that plaintiff began smoking cigarettes at the age of 12 and has a history of emphysema and COPD. [R. 20, 170]. The ALJ relied on a September 12, 2005 medical report of plaintiff's treating physician, Dr. Michael G. Gietzen, D.O., as evidence that plaintiff failed to follow Dr. Gietzen's advise to quit smoking.

> [T]he claimant 'knows' he needs to discontinue smoking, but does not want any medical assistance. Following examination, the assessment was chronic obstructive pulmonary disease and it was noted that the claimant was 'encouraged to cease smoking.'

[R. 20].[4] Plaintiff faults the ALJ for failing to inquire at the hearing held in 2007, whether plaintiff had quit smoking, because the report also indicates that plaintiff stated he was going to try to quit smoking on his own without medical assistance. [R. 170].

---

[4] The ALJ found that plaintiff's COPD is a severe impairment but that his combined impairments would not prevent him from performing light exertion, with the limitation of avoiding concentrated exposure to dust and fumes. Thus, the ALJ did take into consideration plaintiff's breathing problems by finding that the light work performance should be further limited by a dust and fume free environment.

The Court finds no merit in plaintiff's argument. Plaintiff restricted his claim in the instant appeal to whether the ALJ's determination of credibility is supported by the evidence. The Tenth Circuit has held that a claimant's failure to follow a doctor's instructions is a factor in determining credibility. Sims v. Apfel, 172 F.3d 879 (10th Cir. 1999)(unpublished).[5] Because plaintiff is not challenging the accuracy of the medical record relied on by the ALJ, whether plaintiff had quit smoking in 2007 was not relevant to the ALJ's finding that plaintiff failed to comply with his doctor's advise in 2005. In addition, the record indicates that plaintiff advised Dr. Ravinder Kurella, M.D. on August 26, 2006 that at that time he was smoking six cigarettes day. [R. 174]. Thus, the ALJ's finding as to credibility was supported by substantial evidence.

Plaintiff also relies on several x-ray reports as objective medical evidence to support the credibility of his testimony regarding pain. First plaintiff cites an x-ray taken on July 31, 2006. However, the x-ray report is consistent with the ALJ's finding that plaintiff's pain would not prevent him from working. The x-ray report states "small osteophytes are seen," with disc spaces being "relatively normal," and "mild" facet arthritic changes extending from l-4 to S-1 and "minimal" retrolisthesis being present at L4-L5. The report concludes that "[n]o other clearly acute abnormality is seen." [R. 212].

Plaintiff next relies on an MRI report dated December 6, 2007. However, this report also supports the ALJ's findings as to plaintiff's credibility. This report shows a "questionable" old compression at T10, "some" osteophytes and "mild" collapse in the lower lumbar region with the diagnosis of "multi-level degenerative disease." [R. 58].

---

[5] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

Plaintiff cites a MRI report taken on September 25, 2007. Again, this MRI report supports the ALJ's determination as to plaintiff's credibility. The report shows that plaintiff's vertebral body heights and alignment are within "normal limits." There is "relative" disc space narrowing at T11, T12 and T12-L1. Otherwise intervertebral disc heights are "fairly well maintained." There is disc desiccation at L3-L4, L4-L5 and L5-S1. The bone marrow signal is "within normal limits." The conus medullaris and cauda equina are within "normal limits." There is "minimal" neural foraminal narrowing and "mild" central canal stenosis present at L4-L5. The doctor's overall diagnosis was "shallow" disc protrusion with signal alteration compatible with annular tears at L3-L4 and L4-L5. [R. 55].

In arguing that these radiology reports support the credibility of his testimony, plaintiff omitted words (shown above in quotes) contained in the medical records which modified the severity of plaintiff's back injuries and supported the ALJ's determination as to the intensity, persistence and limiting effects of these symptoms. Thus, the Court concludes that the objective medical evidence of record supports the ALJ's determination regarding credibility.

Next, plaintiff challenges the ALJ's failure to acknowledge that an x-ray taken on February 14, 2007, of plaintiff's right foot revealed a calcaneal spur and degenerative changes. Plaintiff argues this x-ray is objective medical evidence that substantiates the credibility of his testimony that he has pain in his right foot. [Dkt. # 15 at 5]. Again, the plaintiff omits words included within the medical report which modify and limit the severity of the diagnosis. The report reads, there is a "very small" posterior calcaneal spur and "minimal" degenerative change of the distal toe joints. The report concludes "[n]othing else clearly acute is identified." [R. 213]. Moreover, plaintiff did not include a claim for an impaired right foot in his request for disability benefits, so evidence

regarding plaintiff's right foot was irrelevant to the ALJ's decision.

It is well settled that an ALJ's findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Brescia v. Astrue, 287 Fed. Appx. 626 (10th Cir. 2008)(unpublished). Here, the ALJ sufficiently explained the link between the evidence and his determination that plaintiff's testimony was not entirely credible. The ALJ cited and relied on objective medical evidence and opinion evidence of licensed physicians. The ALJ relied on the report of Dr. Ravinder R. Kurella, M.D. who prepared a consultative examination. [R. 20]. Dr. Kurella's assessment included, among other things, that plaintiff had a full range of motion in his neck, bilateral hip and knee joints, shoulder, elbow and wrist joints, and that plaintiff's gait was normal. [R. 175]. Plaintiff argues that Dr. Kurella's report was incomplete and unreliable and that the ALJ erred in not recontacting Dr. Kurella for a full examination. The Court finds no merit in this contention, because Dr. Kurella's report is consistent with the objective medical evidence in the record, and the medical records from plaintiff's treating physician. Thus, no additional consultative examination was necessary in order for the ALJ to reach his decision. The ALJ had sufficient facts before him to make an informed decision and that decision was supported by substantial evidence. See generally, Medina v. Apfel, 173 F.3d 864 (10th Cir. 1999) (unpublished).

Additionally, the ALJ noted that the record did not contain an opinion from a treating or examining physician indicating that plaintiff was disabled and unable to work. [R. 22].

The Court finds that the ALJ sufficiently explained the link between the evidence and his determination that plaintiff's testimony was not entirely credible. After thoroughly reviewing and citing plaintiff's medical evidence, the ALJ summarized his findings:

> [C]laimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, and the findings made on examination. Specifically, the severity of claimant's symptom's is disproportionate in comparison to the usual expected severity of his condition. Therefore, the alleged effect of the claimant's symptoms on activities of daily living and basic task performance is not consistent with the total medical and non-medical evidence in the file. As previously noted, the physical findings and supporting clinical data do not closely corroborate or correlate with the claimant's subjective complaints.

[R. 22]. Having carefully conducted a de novo review of the medical evidence and the record as a whole, the Court concludes that the ALJ applied the correct legal standards in assessing plaintiff's credibility and that his assessment is supported by substantial evidence.

## Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The Court further finds that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

IT IS SO ORDERED this 13th day of August, 2009.

T. Lane Wilson
United States Magistrate Judge